FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TUNDE A. ADEYI,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------------------------X

06 CV 1454 (ARR)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Tunde Adeyi moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied.

## BACKGROUND

On October 17, 2001, following a jury trial, Adeyi was convicted of importation and possession with intent to distribute heroin in violation of 21 U.S.C. § 952 and 18 U.S.C. § 841. After an evidentiary hearing held on January 28, 2004, the court, by Opinion and Order dated June 24, 2004, denied Adeyi's motion for a new trial pursuant to Fed. R. Crim. P. 33. (See Govt. Ex. B.) The court held that Adeyi was not denied a fair trial as a result of any problems that may have occurred with the interpretation of the proceedings into Yoruba nor with Adeyi's difficulty hearing. The court further held that Adeyi was not denied effective assistance of counsel because his trial counsel, Emilio Marino, failed to recover Adeyi's hearing aid from the government, failed to address Adeyi's hearing difficulty and interpretation problems, or coerced Adeyi to testify in his own defense. The court additionally concluded that the several other grounds for

1

post-conviction relief raised by Adeyi in a series of pro se submissions were "meritless and dismisse[d] them for substantially the same reasons that the government proposed" in its opposition memorandum of May 9, 2003. (Govt. Ex. B at 4 n.3.)

On March 18, 2005, the court sentenced Adeyi, who had been represented by Harry Batchelder at the January 28, 2004, hearing and throughout the bulk of Adeyi's sentencing phase.[1] Adeyi subsequently appealed his conviction. By Summary Order dated February 7, 2006, the Second Circuit affirmed Adeyi's conviction while declining to address the ineffective assistance of counsel claims raised by Adeyi and Adeyi's appellate counsel, Vivian Shevitz, so that Adeyi might raise them in a petition for a writ of habeas corpus under 28 U.S.C. § 2255. United States v. Adeyi, 165 Fed. Appx. 944 (2d Cir. 2006).

By motion filed March 22, 2006, Adeyi indicated his intent to file a § 2255 petition and requested appointment of counsel. By order dated June 6, 2006, the court withdrew a prior order construing Adeyi's submission as a § 2255 petition and ordered Adeyi to inform the court if it was in fact his intention that the March 22 motion be construed as a § 2255 petition. By letter dated June 12, 2006, Adeyi informed the court that he intended his March 22 motion to be characterized as a § 2255 petition. The court therefore issued an order to show cause on June 26, 2006, directing the government to respond to Adeyi's petition.

In his petition, Adeyi claims that he was denied the effective assistance of counsel for the following reasons: (1) Marino failed to retrieve Adeyi's hearing aid, which the government had seized upon Adeyi's arrest; (2) Marino failed to raise evidentiary objections to (a) Customs

---

[1] On December 6, 2001, after Adeyi's trial, the court appointed Lisa Scolari to replace Marino as counsel. On July 25, 2002, upon Adeyi's request, the court relieved Scolari and appointed Harry Batchelder to represent Adeyi.

2

Inspector Peter J. Salamone's testimony about his training and to (b) handwriting expert John Sang's testimony opining that handwritten slips found in the heroin packages appeared to be authored by Adeyi; (3) Marino brought up Adeyi's 1996 arrest for smuggling heroin in his direct examination of Adeyi; (4) Batchelder failed to confront Marino with the May 15, 2001, letter and inventory form at the post-trial evidentiary hearing; (5) Batchelder improperly defined "threat" for Adeyi, thereby preventing Adeyi from clearly testifying at the post-trial evidentiary hearing regarding the alleged threats coercing Adeyi to testify on his own behalf; and (6) Batchelder had a conflict of interest with Adeyi such that the court should have granted Adeyi's requests for the removal of Batchelder and the appointment of another attorney. For the reasons set forth below, these claims are without merit.

## DISCUSSION

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Id. 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one. See Strickland, 466 U.S. at 697.

(1) Adeyi claims he was denied effective assistance of counsel by Marino's failure to retrieve his hearing aid, which the government had seized upon Adeyi's arrest. This claim is without merit because, even assuming that counsel's omission falls below constitutional standards, Adeyi cannot demonstrate that he was prejudiced by this.

There is no evidence that Adeyi ever asked Marino or anyone else to retrieve his hearing aid from the government prior to the appointment of Lisa Scolari as his lawyer in December 2001. At the Rule 33 evidentiary hearing, Adeyi testified that he told Marino "[m]any times" that he could not hear. (Jan. 28, 2004, at 9.) Adeyi also testified that he told all of his attorneys "that I couldn't hear." (Id. at 17.) However, Adeyi did not testify at the evidentiary hearing that he ever informed Marino that he had a hearing aid and that the government had seized it. At the hearing, Marino testified that he did not recall knowing that the government had seized Adeyi's hearing aid and that Adeyi "never mentioned it to me." (Jan. 28, 2004, at 69.)

There is, however, some evidence that Marino knew or at least should have known that the government had in its possession a hearing aid belonging to Adeyi. By letter dated May 15,

4

2001, the government provided to Adeyi through his counsel, Marino, discovery materials pursuant to Fed. R. Crim. P. 16. (See Govt. Ex. E.) This letter stated, among other things, that "the United States Customs Service has custody of several items of the defendant's personal property. Accordingly, a inventory of those items is enclosed." (Govt. Ex. E at 2.) The enclosed inventory form lists several items, one of which is Adeyi's hearing aid. (Govt. Ex. E at 5.) At trial, Marino used the inventory form in his cross-examination of Customs Inspector Peter J. Salamone. (See Trial Tr. at 67-68.)

The court entertains serious doubts as to whether the objective standard of reasonableness under prevailing professional norms requires defense counsel to discover from an inventory form listing several other items that his client had a hearing aid and, on his own initiative in the absence of a request from his client who has nonetheless complained about hearing difficulties, to seek its return from the government.

However, assuming for the sake of argument that Marino should have known that the government had Adeyi's hearing aid and under the circumstances should have sought to retrieve it, Adeyi cannot establish that this failure prejudiced him. The court concluded in denying Adeyi's Rule 33 motion that "Adeyi's hearing difficulty was not so severe that it rendered him effectively absent from his own trial. Rather, the evidence merely establishes that, on a handful of occasions, Adeyi experienced hearing difficulties; the court, his counsel, or the interpreters were made aware of these difficulties; and steps were immediately taken to remedy the situation." (Govt. Ex. B at 13. See also Tr. of June 14, 2001, at 2-3; Tr. of Sept. 4, 2001, at 2, Govt. Ex. C; Trial Tr. of Oct. 15, 2001, at 30-31, Govt. Ex. D.) For the reasons set forth in the Rule 33 opinion, the court concludes that Marino's failure to retrieve Adeyi's hearing aid from

the government did not prejudice Adeyi by rendering him effectively absent from his own trial. Aside from arguing that prejudice is presumed "where counsel is actually or constructively denied," see United States v. Wellington, 417 F.3d 284, 287 (2d Cir. 2005), and that the use of headphones at trial instead of his hearing-aid damaged his ears, Adeyi has not specified how Marino's failure to retrieve his hearing-aid prejudiced him. Thus, the second prong of Strickland–demonstrating a reasonable probability that but for Marino's failure the result of the proceeding would have been different–has not been satisfied. Therefore, even assuming that Marino's performance fell below the objective standard of reasonableness, Adeyi is not entitled to habeas relief on this ground.

(2) Adeyi argues that Marino provided ineffective assistance by failing to raise evidentiary objections to (a) Customs Inspector Peter J. Salamone's testimony about his training and to (b) handwriting expert John Sang's testimony opining that handwritten slips found in the heroin packages appeared to be authored by Adeyi. These arguments are without merit.

At trial, Salamone briefly testified to the training he had received to become a customs inspector, mentioning the nine-and-a-half week basic inspector's course, the three-and-a-half week senior inspector's course, and his ongoing work as a National Recovery Trainer for the Customs Service. (See Trial Tr. at 18-19.)

On direct appeal, the Circuit held that this court had not committed plain error by admitting this testimony into evidence, citing the wide latitude this court has in determining the relevancy of evidence and holding that the "brief discussion of his training" did not seriously affect the fairness, integrity, or public reputation of Adeyi's trial. United States v. Adeyi, 165 Fed. Appx. 944, 946 (2d Cir. 2006).

6

Such background testimony by law enforcement agents is traditionally admitted into evidence and does not serve to transform Salamone into an expert witness. Marino's failure to make a meritless objection to this evidence cannot constitute ineffective assistance of counsel. See Duncan v. Griener, No. 97 Civ. 8754, 1999 WL 20890, at *10 (S.D.N.Y. Jan. 19, 1999) (Since trial counsel's objection would have been "fruitless," the failure to object "is not evidence of ineffective assistance of counsel.").

At trial, after a voir dire conducted by Marino, Sang was qualified as an expert in forensic document examination, as he has been more than 100 times in federal and state court. (Trial Tr. at 157, 163.) Sang testified that it was his opinion that two of the handwritten slips retrieved from the packages of heroin were written by the same person who authored entries in Adeyi's address book and that four other documents were "highly probably written by the author of the known writing." (Trial Tr. at 163-165.) Marino aggressively cross-examined Sang. (Trial Tr. at 188-215.)

The court charged the jury to evaluate expert testimony as it would any other witness, instructing:

> You may give expert testimony whatever weight, if any, you find it deserves in light of all the other evidence before you. You should not, however, accept a witness's testimony merely because he or she is an expert in a field, nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

(Trial Tr. at 301.)

On appeal, the Circuit held that the legal question of the admissibility of a handwriting expert's opinion as to authorship is an unsettled question in this Circuit and so its admission into

7

evidence was not plain error because it was not clearly inadmissible. Adeyi, 165 Fed. Appx. at 945-46.

The court concludes that habeas relief is not warranted on the ground that Marino provided ineffective assistance by failing to object to Sang's conclusion regarding the documents because such an objection would have been meritless. Although the Second Circuit "has not authoritatively decided whether a handwriting expert may offer his opinion as to the authorship of a handwriting sample, based on a comparison with a known sample," Adeyi, 165 Fed. Appx. at 945-46 & n.1, this court concludes that the great weight of authority favors admitting such opinion testimony and thus, the objection Adeyi contends Marino should have made would have been overruled.

In affirming Adeyi's conviction, the Second Circuit stated that "those circuits that have considered the question are unanimous that a properly admitted handwriting expert may, if the factors enumerated in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), are satisfied, offer an opinion as to the authorship of a disputed document." Adeyi, 165 Fed. Appx. at 946 n.1. The Southern District recently noted that it could find

> no case in this jurisdiction in which a district court has excluded the testimony of a handwriting expert based on a finding that forensic document examination does not pass the Daubert standard. Moreover, although some district courts have restricted the testimony of handwriting experts to explaining to a jury the similarities and differences between known and questioned handwriting samples, see, e.g., United States v. Oskowitz, 294 F. Supp. 2d 379, 383-84 (E.D.N.Y. 2003) (collecting cases), the Second Circuit has never held that a handwriting expert may not offer an opinion on the ultimate question of authorship. In fact, every circuit court that has considered this question has concluded that a properly admitted handwriting expert may offer an opinion regarding the authorship of a handwriting sample if the factors

8

enumerated in Daubert are satisfied." A.V. by Versace, Inc. v. Gianni Versace S.p.A., 446 F. Supp. 2d 252, 267 n.14 (S.D.N.Y. 2006).

In light of the overwhelming legal authority supporting the admissibility of expert testimony such as Sang offered at trial, Marino's failure to object to that testimony cannot constitute ineffective assistance of counsel.

Because the evidentiary objections Adeyi contends Marino should have made lacked merit, Marino's failures to object do not constitute ineffective assistance and habeas relief is not warranted on this basis.

(3) Adeyi argues that Marino provided ineffective assistance by eliciting testimony about Adeyi's 1996 arrest on direct examination of Adeyi. This claim is without merit.

At trial, the court preliminarily ruled that testimony concerning Adeyi's 1996 arrest would come within Fed. R. Evid. 404(b), but that it was too prejudicial and so not admissible pursuant to Fed. R. Evid. 403. The court further stated that it would revisit the issue "[d]epending upon whether there's a defense case and what the defense case consists of." (Trial Tr. at 217.) Adeyi testified on his own behalf and, during the direct examination, Marino briefly elicited Adeyi's testimony about his 1996 arrest. (Trial Tr. at 224-226.) After the direct examination, in a side-bar concerning the scope of cross-examination regarding the 1996 arrest, the court noted that Marino had brought out the issue, anticipating that it would be the subject of cross. Marino stated that he had done so "purposely," correctly noting, "if I didn't open the door, you would have allowed it anyway." (Trial Tr. at 237-238.) The court limited cross-examination on the topic to the issue of Adeyi's knowledge. (Trial Tr. at 239.) The government's cross-examination covered the 1996 arrest in a brief and limited manner. (Trial Tr. at 248-249.)

9

The court later noted for the record that Marino's raising the prior act testimony on direct examination "was a strategically appropriate thing for counsel to do, because, as counsel correctly assumed, once his client took the stand and affirmatively disclaimed knowledge, denied ever knowing, it became even more probative, and I would, in fact, have admitted it on cross-examination. . . . I had told you at the beginning . . . that I thought it was probative, and I told you again I hadn't given a final ruling, but I simply wanted you to know that I would have admitted it, for all the reasons spelled out on the record, that it was admissible under 404(b)." (Trial Tr. at 266.)

Raising a prior act on direct in order to soften the blow of what will almost certainly emerge on cross-examination is "the kind of tactical decision that courts in the Second Circuit are reluctant to second guess." Jeremiah v. Artuz, 181 F. Supp. 2d 194, 205 (E.D.N.Y. 2002). This strategy does not fall below an objective standard of reasonableness under prevailing professional norms. Therefore, Adeyi was not denied the effective assistance of counsel on this basis.

(4) Adeyi argues that he was denied effective assistance of counsel by Batchelder's failure to confront Marino at the post-trial evidentiary hearing with the May 15, 2001, letter and inventory form. This claim is without merit.

At the evidentiary hearing, Batchelder cross-examined Marino about, among other things, Adeyi's hearing problems and Marino's failure to take steps to retrieve Adeyi's hearing aid. (Jan. 28, 2004, at 69-71.) Marino testified that he did not recall knowing that the government had seized Adeyi's hearing aid and that Adeyi "never mentioned it to me." (Jan. 28, 2004, at 69.)

Batchelder's failure to confront Marino with the inventory form to indicate that Marino

had reason to know that the government had seized Adeyi's hearing aid does not merit habeas relief because it posed no prejudice to Adeyi. In deciding above whether Marino's failure to retrieve the hearing aid constituted ineffective assistance, the court assumed that Marino should have known that the government had Adeyi's hearing aid and under the circumstances should have sought to retrieve it. Because that was the very purpose for which Adeyi contends Batchelder should have used the inventory form, Batchelder's failure to confront Marino with the form did not diminish in any way the strength of Adeyi's argument that Marino was ineffective. Batchelder's failure to confront Marino with the form therefore caused Adeyi to suffer no prejudice whatsoever. For this reason, no habeas relief is warranted on this basis.

(5) Adeyi argues that Batchelder provided ineffective assistance by improperly defining "threat" for Adeyi, thereby preventing Adeyi from clearly testifying at the post-trial evidentiary hearing regarding the alleged threats coercing Adeyi to testify on his own behalf. This claim is without merit.

At the evidentiary hearing, Batchelder questioned Adeyi about his claim that he had been coerced to testify. (Jan. 28, 2004, at 9-16.) Batchelder asked, "How did [Marino] coerce you to testify? What specific facts coerced you to testify?" (Jan. 28, 2004, at 12.) Batchelder also asked Adeyi, "What other factors caused you to testify, after you told [Marino and the interpreter] in the back you didn't want to testify?" (Jan. 28, 2004, at 14.) On cross-examination, Adeyi was asked, "did your lawyer do anything else to force you?" To which Adeyi responded, "He put pressure on me, and kept saying I have to talk, I have to talk." (Jan. 28, 2004, at 20.) Adeyi was also asked on cross about the interpreter's role in "forcing" him to testify. (Jan. 28, 2004, at 21-24.)

11

The record demonstrates that Adeyi was given a full and fair opportunity to present the facts that underlie his claim that his counsel and an interpreter coerced him to testify. Adeyi was asked open-ended questions and given the chance to explain what he meant by his claim that he had been coerced. The determination of whether Adeyi had been coerced was for the court to make, which it did in ruling on Adeyi's Rule 33 motion. In the Rule 33 opinion, the court evaluated all of the testimony from the evidentiary hearing and determined that the evidence failed to show that Adeyi had been forced to take the stand. (Govt. Ex. B at 18-22.)

Adeyi's argument that Batchelder's assistance was ineffective because he did not properly advise Adeyi of the legal definition of threat amounts to an argument that Adeyi would have appreciated more legal guidance so that he might have tailored his testimony at the evidentiary hearing in a way that might have altered the holding of the Rule 33 opinion on this matter. The court is reluctant to find that failing to suborn perjury constitutes ineffective assistance of counsel.

(6) Finally, Adeyi claims that Batchelder had a conflict of interest with Adeyi such that the court should have granted Adeyi's requests for the removal of Batchelder and the appointment of another attorney. This claim, like all the others, is without merit.

The Sixth Amendment right to counsel "includes a right to conflict-free representation." United States v. Doe, 272 F.3d 116, 122 (2d Cir. 2001) (quoting Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)). However, this right does not "guarantee a 'meaningful relationship' between the defendant and his counsel." Id. (quoting Morris v. Slappy, 461 U.S. 1, 13-14 (1983)). The Second Circuit prescribes four factors to consider whether a district court properly exercised the discretion it has in deciding a motion to substitute counsel:

> (1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; . . . (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense[; and (4)] whether the defendant substantially and unjustifiably contributed to the breakdown in communication.

Doe, 272 F.3d at 122-23 (internal quotations omitted).

In several letters to the court in April 2003, Adeyi complained about Batchelder's representation of him, contending that Batchelder was not advocating in his favor and that they were having difficulty communicating. In light of this, Adeyi asked the court to order the appointment of another counsel to replace Batchelder. On May 1, 2003, the court held a conference to address Adeyi's concerns and Adeyi's motion for bail. At this conference, the court inquired into Adeyi's concerns with Batchelder's representation and concluded that there was no basis to relieve Batchelder. (May 1, 2003, Tr. at 2-8.) Specifically, the court noted that Batchelder had not been able to see Adeyi immediately upon his appointment in July 2002 because Batchelder was then on trial "in a very high profile organized crime case," during which he broke his hip. (May 1, 2003, Tr. at 4.) The court noted, however, that, as evidenced by the letters Batchelder wrote to Adeyi about his case that Adeyi then forwarded to the court, Batchelder "has, in fact, been extraordinarily competent and assiduous in analyzing the issues relating to your case. . . . [H]e's done an extraordinary amount of work in your case and he has worked very hard to review every single aspect of this record and determined whether or not it was possible to bring a post-trial motion in the case." (May 1, 2003, Tr. at 4-6.) Although the letters indicate that Batchelder disagreed with Adeyi over the merit of several motions Adeyi wished to bring, the court noted that Batchelder had agreed to transmit all of Adeyi's motions to

13

the court with a request that the government respond to the issues raised. (May 1, 2003, Tr. at 5-8.) After explaining this, the court advised Adeyi that it was important to have a good lawyer at sentencing and "you have got to work with Mr. Batchelder to get ready for the sentence, should that happen." (May 1, 2003, Tr. at 8.) The court then asked Adeyi if he was satisfied, to which he responded, "Yes, your Honor." (May 1, 2003, Tr. at 8.) After setting a briefing schedule for the government's response, the court denied Adeyi's bail motion. (May 1, 2003, Tr. at 8-9.)

By letter dated January 12, 2004, Adeyi again asked the court to order Batchelder to withdraw from his representation and to appoint another counsel on the grounds that Adeyi had not seen Batchelder in six months, there was a conflict of interest between them, Batchelder was not trustworthy, and Batchelder had been manipulating Adeyi. On January 20, 2004, the court held a conference to address, among other issues, Adeyi's concerns about Batchelder's representation. (Jan. 20, 2004, Tr. at 4-8, 13-17.) At the conference, the court inquired into Adeyi's concerns with Batchelder's representation. Batchelder stated that he had tried to visit Adeyi "the other day and he refused to visit." (Jan. 20, 2004, Tr. at 4-5.) The court encouraged Adeyi to meet with Batchelder that afternoon and, if there were still a problem, Adeyi would be able to raise it in court that day. The court explained, however, that the problem must be more than a difference in tactics. (Jan. 20, 2004, Tr. at 5-8.) After a recess, Batchelder informed the court that he had spoken with Adeyi, who gave him additional information concerning his hearing problems and the conduct of the interpreters at trial. (Jan. 20, 2004, Tr. at 9.) Adeyi addressed the court and complained that Batchelder had not made any progress on motions Adeyi wanted him to make. (Jan. 20, 2004, Tr. at 13.) Batchelder explained that these motions concerned meritless claims of double jeopardy and newly discovered evidence. (Jan. 20, 2004,

Tr. at 13-17.) The court then explained that several of Adeyi's claims had been responded to by the government and would be addressed by the court, while other claims would be the subject of the evidentiary hearing scheduled for January 28, 2004. The court then stated, "I need to hear the facts before I can address [those claims]. Okay? So you speak with Mr. Batchelder." (Jan. 20, 2004, Tr. at 17.) To which Adeyi responded, "Yes, I understand, your Honor." (Id.)

The record also contains a letter dated January 22, 2004, from Batchelder to the court, in which Batchelder responds to Adeyi's contentions that Batchelder had agreed to file several motions. Batchelder wrote that Adeyi's claim that he had agreed to do so was false, that his review of the record suggested such motions would be frivolous, and that he had not yelled at Adeyi.

Based on the record in this case, the court concludes that it did not err in denying Adeyi's requests for substitution of counsel and Adeyi was not deprived of his right to counsel on this or any other basis. Although Batchelder and Adeyi had disagreements, "the conflict between the two was not so great that it resulted in [a] total lack of communication preventing an adequate defense." Doe, 272 F.3d at 124 (internal quotations omitted). Batchelder advocated aggressively on Adeyi's behalf throughout his representation of Adeyi. It is clear from Batchelder's performance at the post-trial evidentiary hearing on January 28, 2004, and throughout Adeyi's prolonged sentencing phase that Batchelder and Adeyi communicated in presenting Adeyi's defense. The disagreements between Batchelder and Adeyi did not prevent an adequate defense in this case.

Nor can Adeyi establish that his Sixth Amendment right to counsel was violated as a result of a conflict of interest between him and Batchelder. The court determines that there is no

basis for finding a per se, actual or potential conflict in this case. See Doe, 272 F.3d at 125-26 (describing Second Circuit standards for conflicts and finding none). For these reasons, Adeyi is not entitled to habeas relief on this claim.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because Adeyi has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: January 22, 2007
Brooklyn, New York

SERVICE LIST:

> *Pro Se Petitioner*
> Tunde A. Adeyi
> 55329-053
> FCI Ray Brook
> P.O. Box 9004 Del-A
> Ray Brook, NY 12977
>
> *Attorney for the Respondent*
> Katya Townshend Price Jestin
> United Stated Attorney's Office, EDNY
> One Pierrepont Plaza
> 14th floor
> Brooklyn, NY 11201